**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No.  3:18CR127 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **WILLIAM MILLETT** | : | |

## UNITED STATES'S SENTENCING MEMORANDUM

**TO THE HONORABLE COURT:**

**COMES NOW** the United States of America, by and through the undersigned attorneys, and respectfully submits this Sentencing Memorandum with regard to the defendant William Millett ("the defendant") to assist the Court in consideration of the relevant issues in determining the appropriate sentence in this case pursuant the United States Sentencing Guidelines and Title 18, United States Code, Section § 3553.

**I.**   **Introduction**

The defendant perpetuated the sexual abuse of children by intentionally collecting and viewing images and videos of child pornography, including images of prepubescent minors, for his own sexual gratification.  He did this by accessing the dark web through an onion router that would mask his identity and creating user accounts in a child pornography forum where he also posted depraved and vulgar comments about the child victims, including about at least one photograph of his own two-year-old son, which he uploaded to the site.  The investigation of this case revealed that the defendant possessed a total of 235 images and 2 videos of child pornography.

## II.      Procedural Background

The defendant was arrested on November 9, 2017, pursuant to a criminal complaint that charged him with Receipt of Child Pornography in violation of Title 18, USC, Section 2252A(a)(2) and (b) and Possession of Child Pornography in violation of Title 18, USC, Section 2252A(a)(5)(B).  Dkt. No. 1.  He was ordered detained pending trial.  Dkt. No. 11.

On June 20, 2018, the defendant pled guilty to an Information that charged him with one count of Receipt of Child Pornography in violation of 18 U.S.C. 2252A(a)(2)(B) and (b)(1).   Dkt. No. 38.  He faces a statutory minimum sentence of five years and a maximum sentence of 20 years imprisonment, a term of supervised release of five years to life, a maximum fine of $250,000, and a $100 mandatory special assessment.  Moreover, the Government notes that on May 29, 2015, 18 U.S.C. § 3014 was enacted, which requires the Court to assess an additional $5,000 special assessment because the defendant was convicted of a crime under Chapter 110 of Title 18, Sexual Exploitation and Other Abuse of Children, unless the Court finds the defendant is indigent.

In addition, as part of the Plea Agreement, the defendant does not object to the additional Special Conditions of Supervised Release specifically outlined in the Rider to the Plea Agreement.  See Plea Agreement, Dkt. No. 41, at pp. 13-14. The defendant also agreed to forfeit his interest in a SanDisk Cruzer Glide 16GB USB Thumb Drive, which is specified in the plea agreement (the "Electronic Equipment").  See Plea Agreement at p. 3.  The Government has filed a Motion for Forfeiture of the Electronic Equipment.  Dkt. No. 54.

The Pre-Sentence Report ("PSR") calculated the defendant's base offense under U.S.S.G. § 2G2.2(a)(1) to be 22 and then applied the following specific offense characteristic adjustments:  (a) a two-level downward adjustment because the defendant's conduct was limited to receipt of child pornography, and he did not intend to distribute such material; (b) a two-level upward adjustment because the material involved a minor who had not attained the age of twelve under § 2G2.2(b)(2); (c) a two-level upward adjustment because the offense involved the defendant's use of a computer under § 2G2.2(b)(6); a four-level upward adjustment because the offense involved images that portrayed sadistic or masochistic conduct; and (d) a four-level upward adjustment because the offense involved at least 300, but not more than 600 images under § 2G2.2(b)(7)(C), all of which result in a total adjusted base offense level of 32.  Dkt. No. 51, pp. 13-14.  Three (3) levels are subtracted pursuant to U.S.S.G. § 3E1.1 based on the defendant's timely acceptance of responsibility for a final base offense level of 29.  *Id.* at 14.

The defendant has no known criminal history other than the criminal conduct underlying this case; therefore, his Criminal History Category is I.  *Id.*  A base offense level of 29 and a CHC of I yield a sentencing range of 87 to 108 months and a fine range of $30,000 to $250,000.  U.S.S.G. § 5E1.2(c)(3).  *Id.* at 28-29.  The defendant is also subject to a supervised release term of five years to life.  18 USC 3583(k) and U.S.S.G. § 5D1.2(b)(2). The Government agrees with the Guidelines calculation in the PSR, which is the same calculation that the parties agreed to in the Plea Agreement.  <u>See</u> Plea Agreement at p. 5.  The Government has no objections to the PSR.

The defendant is scheduled to be sentenced on October 10, 2018, at 1:00 p.m.

III.   Factual Background

The Investigation of "El Paraiso Kiddo" Forum

At the end of January 2017, an anonymous hacker accessed and took down the Freedom Hosting II Server.  The anonymous hacker publicly published the data from the websites, stripped of child pornography.  In February 2017, HSI began an investigation of the publicly available data and subsequently issued administrative subpoenas to U.S. based Electronic Service Providers ("ESPs").

The anonymous hacker ultimately provided the contents, including the child exploitation material, to the FBI.  HSI provided input to a search warrant affidavit based upon the review of the publicly available data to define what material would be reviewed by law enforcement.  The FBI then obtained a search warrant on May 17, 2017, in the Northern District of Maryland, for the FBI, HSI and foreign law enforcement counterparts to review the contents from the Freedom Hosting II Server.  On May 18, 2017, the FBI turned over a copy of the contents to HSI.

To date, HSI has focused on several forums to include the forum titled "El Paraiso Kiddo." The Department of Justice Child Exploitation and Obscenities Section (CEOS) rebuilt the "El Paraiso Kiddo" forum on C3's internal network. They determined that once an individual entered the El Paraiso Kiddo forum, they are immediately able to view images of child pornography.  HSI had the capability to view the forum as it appeared to users prior to the site being hacked.

HSI captured screenshots of the users' activity on the forum. This includes

the users' profiles, comments made by users within conversational threads on the forum, as well as a review of any images the users posted within their comments.

Users were able to input an email address when creating a profile account on the El Paraiso Kiddo forum.  However, there was no email verification process to confirm that these were email accounts that actually belonged to the El Paraiso Kiddo user.  HSI reviewed the email addresses associated with the user accounts to determine which accounts appeared to be valid email accounts provided by US ESPs.  HSI then sent administrative legal processes to the U.S. ESPs for these accounts.  HSI cannot confirm through this process that the email address provided by each user on the forum belongs to each user identified through legal process.

> B. <u>Investigation of William Millett</u>

A review of the information provided to HSI Hartford revealed the following accounts were created on the El Paraiso Kiddo forum:

User "bottomboy0303" on the El Paraiso Kiddo forum joined the forum on April 2, 2016, provided email address "bottomboy0303@gmail.com" (EMAIL ACCOUNT #1), and was assigned User ID: 1982.  User "bottomboy0303" made four comments on the forum, all occurring on April 2, 2016.  For example, on April 2, 2016, user "bottomboy0303" posted comment:  "i would fuck her good" under Image ID # 83, which shows the genitalia of a minor female and was tagged with "AzizoSisters\AZ01."

User "thedarkside03" on the El Paraiso Kiddo forum joined on July 8, 2016, provided email address "bibottom03@gmail.com" (EMAIL ACCOUNT #2), and was assigned User ID: 31138.  User "thedarkside03" uploaded one image and made 26 comments on the forum between July 8, 2016 and November 4, 2016, including the following:

> a. On July 8, 2016, user "thedarkside03" uploaded Image ID # 5443 titled "IMG_0121 (1).JPG," which was tagged with "2 butt olds yaer" and was viewed 222 times by other members of El Paraiso Kiddo forum.  Image ID # 5443 appears to show a toddler, approximately two to three years

old, standing at the edge of a body of water wearing only a hat and sneakers with buttocks visible.  This image also shows an adult female wearing a black bathing suit standing in front of the toddler.   In addition, user "thedarkside03" posts comment "this is my son butt what do you think".

   b.   On August 21, 2016, user "thedarkside03" posted comment "anyone want to talk dirty email me EMAIL ACCOUNT #2 i love kids i have three of my own" under Image ID # 5146, which shows an adult male inserting his penis into the vagina of a minor female who is laying on her stomach and was tagged with "slut".

   c.   On August 21, 2016, user "thedarkside03" posted comment "i would make her my little slave an do as i say" under Image ID # 5325, which shows a naked adult male pulling the blond hair of a naked minor female, who appears to be in distress and is wearing a black collar with metal spikes.  The image was tagged with "cry" and contains caption, "Imagine hurting and abusing and torturing this helpless little bitch, punishing her tender little body for hours, just working on her and making her scream and cry in pain, oh yes…"

   d.   On August 24, 2016, user "thedarkside03" posted comment "want to talk dirty email me EMAIL ACCOUNT #2 i have three kids or kik me willsterman69" under Image ID # 6458, which shows a penis penetrating the vagina of a minor female not visible above the waist and was tagged with "fuck".

   e.   On November 4, 2016, user "thedarkside03" posted comment "want to chat or trade pics email me i have three kids an love to talk dirty bidaddy03@gmail.com (EMAIL ACCOUNT #3)" under Image ID # 7260, which shows two hands inserting a penis into a vagina of a minor female who is not visible above her waist due to a red striped blanket or clothing and was tagged with "spritz".

   On August 17, 2017, Kik Interactive Inc. responded to a DHS Summons

requesting subscriber information for Kik user "willsterman69". Kik advised that

Kik user "willsterman69" is subscribed to Ed ANONYMOUS," using an

unconfirmed email address of dickweeb@gmail.con (sic) ("KIK ACCOUNT #1").

Kik also advised that the Kik account for user "willsterman69" was created on

March 22, 2016, and was accessed on September 24, 2016, from IP Address

76.23.134.53 operated by Comcast.

In response to a DHS summons, Google advised that EMAIL ACCOUNT #1 is subscribed to Jim ANONYMOUS, was created on April 1, 2016, from IP Address 66.212.197.110, and is assigned account number 1061763127020.  Google advised EMAIL ACCOUNT #1 was last accessed on April 2, 2016, but Google did not provide any IP Address login history.

Google further advised that EMAIL ACCOUNT #2 is subscribed to the defendant, William MILLETT, was created on December 14, 2015, from IP Address 166.170.20.205, and is assigned account number 40881002735.  Google advised that EMAIL ACCOUNT #2 was accessed on January 7, 2017, from IP Address 216.255.167.77; on January 7, 2017, from IP Address 174.255.193.127; on January 9, 2017, from IP Address 174.255.205.141; and on January 30, 2017, from IP Address 2601:18a:417f:f8fb:4d2f:9fbc:bc68:d08d.

Google also advised that EMAIL ACCOUNT #3 is subscribed to Jim ANONYMOUS, was created on November 3, 2016, from IP Address 198.223.207.160 operated by Verizon Wireless, and is assigned account number 999206153266.  Google further advised that EMAIL ACCOUNT #3 was last accessed on November 7, 2016, but Google did not provide any IP Address login history.

As stated above, defendant William MILLETT is the subscriber of EMAIL ACCOUNT #2.  Searches conducted by the HSI Cyber Crimes Center (C3) using CLEAR, a commercially available database, revealed an individual in Connecticut named William MILLETT, residing at 72-2 Cove Road, Lyme, Connecticut. This search also revealed MILLETT is related to Alexandria Reed.

Searches in the Connecticut Department of Motor Vehicles database

revealed a registered driver in Connecticut named William MILLETT (DOB: 5/25/90), residing at 72-2 Cove Road, Lyme, Connecticut.  MILLETT is assigned Driver's License ID 178315463.  The photograph for MILLETT on file with the Connecticut DMV shows an adult white male with blond hair.  Searches in the Connecticut DMV database also revealed a registered driver in Connecticut named Alexandria Reed, residing at 333 Old Colchester Road, Uncasville, Connecticut.  Reed is assigned Driver's License ID 248797964.  The photograph for Reed on file with the Connecticut DMV shows an adult white female with brown hair.

A WHOIS search for IP Address 216.255.167.77, used on January 7, 2017, at 4:04 AM UTC (January 6, 2016 at 11:04 AM EST) to access EMAIL ACCOUNT #2, which is subscribed to William MILLETT, revealed it is operated by Thames Valley Communications Inc., located at 295 Meridian Street, Groton, Connecticut.

In response to a DHS summons, Thames Valley Communications advised IP Address 216.255.167.77 was subscribed to Rodeway Inn, 425 Bridge Street, Groton, Connecticut, telephone number 860-445-6550 and is assigned Account Number 016801.  Thames Valley Communications advised the lease for IP Address 216.255.167.77 began on January 27, 2016 and ended on March 16, 2017.

On October 18, 2017, the Rodeway Inn, located at 425 Bridge Street, Groton, CT, provided records in response to a DHS Summons.  These records included a receipt showing that William MILLETT, 72-2 Cove Road, Old Lyme, CT 06371, checked into Room 112 of the Rodeway Inn on January 6, 2017, at 3:15 PM EST and checked out on January 7, 2017 at 11:27 AM EST.  MILLETT paid $51.74 using Visa card bearing number ending in 2374.  Based on these records,

MILLETT was a registered guest at the Rodeway Inn in Groton, CT on January 7, 2017 at 4:04 AM UTC (January 6, 2017 at 11:04 PM EST) when EMAIL ACCOUNT #2 was accessed from IP Address 216.255.167.77.

Internet searches for William MILLETT located a publicly available Facebook profile posted at https://www.facebook.com/william.millett.  The profile picture for this Facebook account shows an approximately 25–30 year old white male with blond hair holding a baby wrapped in a blanket, which was posted on September 3, 2016.  The adult male with blond hair in this photograph is similar in appearance to the photograph of William MILLET on file with the Connecticut DMV (DL ID: 178315463).  An additional photograph posted to this Facebook account shows an adult white female with brown hair kissing MILLETT.

A search of MILLETT's Facebook friends revealed a publicly available profile for Alex Millett. The Facebook profile for Alex Millett is located at https://www.facebook.com/reedpapamonk and contains multiple photographs of an adult white female with brown hair similar in appearance to the photograph of Alexandria Reed on file with the Connecticut DMV (DL ID: 248797964).  An additional photograph posted on September 18, 2017, to Alex Millett's Facebook account shows Alex Millett posing at an aquarium with three children ranging in ages from infant to approximately four years old.  A comment posted for this photograph contains "You have 3 now?!".  The number of children in this photograph (3) posing with Alex Millett matches information posted on August 21, 2016 by user "thedarkside03" in the "El Paraiso Kiddo" forum with comment "anyone want to talk dirty email me EMAIL ACCOUNT #2 i love kids i have three of my own," under Image ID # 5146 which shows an adult male inserting his penis

into the vagina of a minor female.

A review of the IP Addresses obtained from Facebook pursuant to a DHS Summons for account "reedpapamonk," which is subscribed to Alex Millett, revealed that IP Address 66.212.197.110 was used on March 11, 2016, to access Facebook account "reedpapamonk".  This same IP Address was also used on April 1, 2016 to create EMAIL ACCOUNT #1, which was then used to register user "bottomboy0303" on the "El Paraiso Kiddo" forum.  User "bottomboy0303" made four comments including "i would fuck her good" under Image ID # 83 showing the genitalia of a minor female.

In addition, a review of the IP Addresses obtained from Facebook for account "reedpapamonk" subscribed to Alex Millett revealed IP Address 76.23.134.53 was used on 8/29/16 to access Facebook account "reedpapamonk". This same IP Address was also used on 9/24/16 to access KIK ACCOUNT #1, which was referenced in a comment posted on 8/24/16 by user "thedarkside03" on the "El Paraiso Kiddo" forum.  The comment by user "thedarkside03" stated "want to talk dirty email me EMAIL ACCOUNT #2 i have three kids or kik me KIK ACCOUNT #1" and was posted under Image ID # 6458 which shows a penis penetrating the vagina of a minor female not visible above the waist.

The above information shows that Alex Millett's Facebook account was accessed in a span of a few weeks by the same IP Addresses used to access EMAIL ACCOUNT #2 and KIK ACCOUNT #1, both associated with an user account on the "El Paraiso Kiddo" forum.  The fact that the same IP Address was used to access multiple accounts across a date range indicates that the IP Address remained assigned to a residence or business for a period of time before the IP

Address was reassigned.  Therefore, the operator of EMAIL ACCOUNT #1, EMAIL ACCOUNT #2, KIK ACCOUNT #1, and Facebook account "reedpapamonk" subscribed to Alex Millett were in the same physical location when accessing the accounts, indicating these account holders reside together or are acquainted with each other.

A further search of Alex Millett's publicly available Facebook profile revealed a publicly available profile for Susan Reed.  Susan Reed appears in commercially available databases as an older relative of Alexandria Reed with a shared address located at 333 Old Colchester Road, Uncasville, CT.

The publicly available Facebook profile for Susan Reed is located at https://www.facebook.com/susan.reed.18 and contains multiple photographs of a white female approximately 40–50 years old.  Reed also posted the same photograph as was posted on September 18, 2017, to Alex Millett's Facebook account showing Alex Millett posing at an aquarium with three children ranging in ages from infant to approximately four years old.

An additional photograph posted to the Facebook account of Susan Reed on July 7, 2016, shows Alex Millett holding what appears to be an approximately two year old female child on the banks of a pond.  This photograph shows a similar beach area and water to the photograph posted on July 8, 2016, by user "thedarkside03" to the "El Paraiso Kiddo" forum.  The photograph posted by user "thedarkside03" to the "El Paraiso Kiddo" forum shows a toddler, visible from behind, approximately two – three years old, standing at the edge of a body of water wearing only a hat and sneakers with buttocks visible and the comment "this is my son butt what do you think".

A review of the IP Addresses obtained from Facebook pursuant to a DHS Summons for William MILLETT's Facebook account located at https://www.facebook.com/william.millett revealed this account was last accessed on September 3, 2017, at 7:13 PM UTC (2:13 PM EST) from IP Address 71.235.187.155.  A WHOIS search for IP Address 71.235.187.155 revealed it is operated by Comcast Communications ("Comcast").

Comcast provided records for IP Address 71.235.187.155 pursuant to a DHS Summons.  Comcast advised that IP Address 71.235.187.155 used on September 3, 2017 at 7:13 PM UTC (2:13 PM EST) was assigned to the 19 Joliet Court, Groton, Connecticut and was subscribed to Ashley Millett with telephone number 860-271-6694 and email address williammillett253@comcast.net. Comcast advised that IP Address 71.235.187.155 was assigned to this account beginning on May 29, 2017 until October 30, 2017.

On October 31, 2017, surveillance conducted at 19 Joliet Court revealed that a gold Chrysler 300M with Connecticut registration AH 11154 was parked in the vicinity of this address.  Alexandria Reed was observed departing 19 Joliet Court late morning in the gold Chrysler 300M and the vehicle was located a short time later parked at Applebee's in Groton, CT.  This vehicle is registered to William MILLETT, 72 Cove Road #2, Lyme, CT.

C. <u>The Search of 19 Joliet Court, Groton, CT</u>

On November 7, 2017, United States Magistrate Judge William I. Garfinkel issued a Search Warrant for 19 Joliet Court, Groton, CT to search for evidence of violations of Title 18, United States Code, Sections 2252A(a).

On November 8, 2017, HSI Special Agents, with assistance from the CSP

and Town of Groton Police Department executed the search warrant at 19 Joliet Court, Groton, CT.  This search warrant resulted in the seizure of numerous electronic devices, including a SanDisk Cruzer Glide 16GB USB Thumb Drive from the bedroom shared by MILLETT and Alexandria Reed.

A forensic examination of the SanDisk Cruzer Glide 16GB USB Thumb Drive revealed multiple image files containing Child Exploitation Material including:

   f.  File titled "Felixxx_170622sps_1ajublhsa.jpg" which shows an approximately 6-8 year old white female with an erect penis touching the left side of her face.

   g.  File titled "Felixxx_165641AJg_40591958291.jpg" which shows an approximately 4-6 year old white female laying on a bed with her left leg in the air and exposing her genitalia.

   h.  File titled "Felixxx_162338dYa_bondges.jpg" (sic) which shows an approximately 12-14 year old white female laying on her back and exposing her genitalia with her hands bound above her head using yellow rope.

The forensic examination of the SanDisk Cruzer Glide 16GB USB Thumb Drive also revealed a file titled "cp.7z," which is an archive file containing a folder titled "JAZZ GUIDES.  Inside this folder are three editions of THE JAZZ GUIDE, which is subtitled "HOW TO HAVE SEX WITH VERY YOUNG GIRLS…SAFELY," and contains a description advising "This is a manual that teaches you how to have sex with little girls...safely. That is with minimal or no harm to the girls anatomy, and in my view a healthy learning experience about sexual pleasure. The morality of sex and the risk of getting caught is your bussiness (sic) and it differs from place to place."  The three editions of THE JAZZ GUIDE contain additional sections and the first edition of the THE JAZZ GUIDE contains sections

with titles including "MY GIRLS," "WHY SO MUCH ANAL,"

"PROGRESSIVEFINGERING," "STRETCH HER," and "MOMMY IT HURTS."  The

three editions of THE JAZZ GUIDE also contain images of minor females

exposing their genitals or engaged in sexual activity.

A total of 198 images and 2 videos of child pornography were located on

the thumb drive.  Moreover, 37 images of child pornography were recovered from

MILLETT's email account.

IV.     **The Legal Framework for Determining an Appropriate Sentence**

Title 18, <u>United States Code</u>, Section 3553(a) directs a sentencing court to

consider, in determining the sentence to be imposed, both the nature and

circumstances of the offense and the history and characteristics of the

defendant.   The sentencing court must also consider the need for the sentence

imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In reaching its sentencing decision, this Court should also construct its analysis

within the framework of the advisory United States Sentencing Guidelines (the

"Sentencing Guidelines" or "Guidelines").  Congress has established the

Sentencing Guidelines as the foundation, or the starting point, from which

sentencing courts should construct the appropriate sentence in each case using

the Section 3553(a) factors noted above.  *United States v. Booker*, 543 U.S. 220

(2005); *United States v. Cutler*, 520 F.3d 136, 155 (2d Cir. 2008); *United States v.*

*Crosby*, 397 F.3d 103 (2d Cir. 2005).  The sentence imposed must be "sufficient,

but not greater than necessary, to comply with" the factors listed above.

*Kimbrough v. United States*, 552 U.S. 85, 102 (2007) (*quoting* 18 U.S.C. § 3553(a)).

### A. The Nature and Circumstances of the Offense

The defendant perpetuated the sexual abuse of children by intentionally collecting and viewing images and videos of child pornography for his own sexual gratification through the use of a computer and his email account.  Many of these images involved prepubescent minors, younger than twelve years old, engaged in sexually explicit conduct such as oral sex, anal sex and vaginal sex as evidenced by the description of Files 1-5, contained in Exhibit A to this Sentencing Memorandum.  Moreover, the defendant engaged in a pattern of posting vulgar and depraved comments about the child-victims in the images he viewed, including an image of his own two-year-old son.

At the time of the search of his home the defendant possessed at least 235 images and 2 videos of child pornography.  Some of these images were found in a file called "THE JAZZ GUIDE," which is subtitled:  "HOW TO HAVE SEX WITH VERY YOUNG GIRLS…SAFELY."  While the Government has no evidence that the defendant had sexual contact with children, his comments on the El Paraiso Kiddo Forum, as well as his possession of the The Jazz Guide indicate a high level of depravity and at least a desire to engage in sexual intercourse with minors.

### B. The History and Characteristics of the Defendant

William Millett  is 28 years old, lives in Groton, CT and is a U.S. citizen.  At the time of his arrest, he was employed in landscaping.  The defendant did not

finish high school, and when he attended school, he was in special education given his low intellectual verbal functioning.

C. <u>The Sentence to be Imposed</u>

The Court must determine the applicable Guidelines range before imposing sentencing.  In this case, the Government agrees that the Guidelines range calculated in the PSR, which is 87 to 108 months of imprisonment, is correct.  In the plea agreement, the defendant also agreed that the Guidelines range calculated in the PSR is correct.  *See* Plea Agreement at p. 5.

Despite the defendant's agreement that the sentencing enhancements listed in the plea agreement are applicable to his case, he argues that they should be "rejected as a matter of policy."  In doing so, the defendant does not dispute the factual basis supporting each enhancement.  Nor could he as he stipulated that he received child pornography from the Internet through the use of a computer and that he possessed 235 images and 2 videos of child pornography, including depictions of prepubescent minors and images of minors engaged in sadistic and masochistic conduct.

Notwithstanding, relying primarily on <u>United States v. Dorvee</u>, 616 F.3d 174 (2d Cir. 2010), the defendant urges the Court to disregard the enhancements because they apply in the majority of child pornography cases.  <u>See</u> Def.'s Sentencing Mem. at 8-14.  However, <u>Dorvee</u> does not state that the child pornography enhancements should not be applied at all.  To the contrary, in <u>Dorvee</u>, the Second Circuit held that the enhancements can lead to unreasonable sentences that are inconsistent with what §3553(a) requires, unless they are applied with great care.  616 F.3d at 198.  This implies, that when the

enhancements are carefully applied, U.S.S.G. § 2G2.2 can lead to a reasonable sentence.

Indeed, since <u>Dorvee</u>, the Second Circuit has continued to uphold the application of the various child pornography related enhancements. <u>See, e.g.</u>, <u>United States v. Aumais</u>, 656 F.3d 147, 157 (2d Cir. 2011) (upholding guidelines sentence based on application of § 2G2.2 enhancements, including two levels for material involving pre-pubescent minors, four levels for sadistic images, two levels for use of a computer, and five levels based upon the number of images); <u>See</u> <u>United States v. Reingold</u>, 731 F.3d 204, 226-27 (2d Cir. 2013) (finding district court erred in not applying use of computer enhancement). The Second Circuit has also noted that <u>Dorvee</u> did not consider the reason that so many of the same enhancements apply in the child pornography cases is that the "[G]overnment, confronting an epidemic of such crimes with limited resources, has focused its prosecutorial efforts on those cases presenting precisely these aggravating factors." <u>Reingold</u>, 731 F.3d at 226 n.19.

Indeed, in this case, the images and videos shared through the El Paraiso Kiddo Forum were highly categorized according to victim age (including toddlers) and gender, as well as the type of sexual activity. The site also included forums for discussion of all things related to child sexual exploitation, including tips for grooming victims and avoiding detection. The defendant in this case not only received and viewed images of child pornography, he also posted vulgar and deprived comments regarding the child-victims he viewed through the site, including his desire to engage in sexual intercourse with pre-

pubescent girls.  He also uploaded an image of his two-year old son and welcomed comments by other users.

### 1.  The Enhancement for Use of a Computer, U.S.S.G. § 2G2.2(b)(6)

The defendant argues that the enhancement for the use of a computer is flawed because

"it is now nearly impossible to obtain child pornography through any means other than the internet."  Def. Sentencing Memo, p. 12.  According to this logic, one could also argue that it is nearly impossible to rob a bank without a gun, but the Court would hardly ignore the defendant's use of a firearm during a bank robbery at the time of sentencing.  The fact is that the defendant used a computer in this case not just to download and view child pornography, but also to trade child pornography and hide his identity, thus making it more difficult for law enforcement to learn of his conduct.  For example, on November 4, 2016, the defendant posted:

> "want to chat or trade pics email me i have three kids an love to talk dirty bidaddy03@gmail.com (EMAIL ACCOUNT #3)" under Image ID # 7260, which shows two hands inserting a penis into a vagina of a minor female who is not visible above her waist due to a red striped blanket or clothing and was tagged with "spritz."

While the use of computers has increased over the years, criminals who use this tool, such as the defendant in this case, have become more sophisticated in their use, navigating the dark web anonymously where they can exploit children online without detection.  Therefore, even considering the defendant's argument on its merit, the enhancement should be applied in this case.

The defendant further argues that the use of the computer increases a defendant's sentence to reflect a harm that has already been accounted for in the

base offense level.  This is simply not correct.  The base offense level accounts for the defendant's receipt of child pornography.  The enhancement for the use of a computer accounts for how the defendant obtained the child pornography he received.

Indeed, the Second Circuit has rejected double-counting challenges to the application of the computer enhancement.  See Reingold, 731 F.3d at 226; United States v. Johnson, 221 F.3d 83, 99 (2d Cir. 2000).  In doing so, the Second Circuit observed that "[a] person 'can traffic in child pornography without using a computer much like one could commit a robbery without the use of a gun.'" Reingold, 731 F.3d at 226 (quoting Johnson, 221 F.3d at 99 (internal quotation marks omitted)).  "Thus, the enhancement does not result in double counting because it does not 'increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for' by the base offense level." Id. (quoting United States v. Volpe, 224 F.3d 72, 76 (2d Cir. 2000) (internal quotation marks omitted)).

In Reingold, the Second Circuit specifically noted the concerns raised in Dorvee, which the defendant points out in his sentencing memorandum, namely that the enhancement applies in virtually every case so as to have the flavor of double counting.  Id.  However, the Second Circuit stated "[i]n neither case . . . did we reverse Johnson or hold that it would be impermissible double counting to apply [the computer] enhancement." Id.  Other circuits have similarly rejected double-counting challenges to the computer enhancement.  See, e.g., United States v. Kiefer, 760 F.3d 926, 931-32 (9th Cir. 2014); United States v. Richardson, 713 F.3d 232, 237 (5th Cir. 2013); United States v. Lewis, 605 F.3d 395, 403 (6th

Cir. 2010); <u>United States v. Tenuto</u>, 593 F.3d 695, 698 (7th Cir. 2010).  Therefore, the application of the computer enhancement is proper in this case.

    **2.  <u>The Enhancement for the Number of Images</u>, § 2G2.2(b)(7)(D)**

       The defendant further argues that the enhancement for the number of images possessed is flawed because "quantity" bears no rational relation to the seriousness of the offense.  This argument is belied by the very structure of the sentencing guidelines.  Quantity drives the seriousness of the offense and the base offense level in drug cases.  Quantity drives the seriousness of the offense and the base offense level in fraud cases.  But the defendant argues that quantity should not drive the seriousness of the offense in child pornography cases.  According to the defendant's logic, possession of a single image of child pornography, and possession of 235 images and 2 videos of child pornography, as is the case here, should be viewed through the same lens by a sentencing court.  Such an argument defies reason.  Clearly a defendant who possesses 235 images and 2 videos (each of which equals 75 images) of child pornography is more culpable than a defendant who possesses less than 300 images because the number of images possessed speaks to the length of time that the defendant has been engaged in the criminal conduct.  The application of this enhancement too is clearly proper in this case.

    **3.  <u>The Enhancement for Images of Prepubescent Children, U.S.S.G. § 2G2.2(b)(2)</u>**

       The defendant also argues that the enhancement for the possession of images of prepubescent children is flawed because possession of such images is part and parcel of child pornography possession.  But this too is not correct.  An examination of the Index to the Playpen website reveals that there are specific

categories of images according to the age of the child.  Therefore, the defendant in this case specifically chose to download images of prepubescent children.  A review of a couple of the images on the defendant's possession drives home the depraved nature of the conduct this particular enhancement was meant to address.

> A file received in email account "bibottom03@gmail.com," titled "1111111050.jpg," shows an approximately 8-10 year old naked white female lying on a table and the minor female's hands and legs are bound with white rope.

> A file received in email account "bibottom03@gmail.com," titled "Felixxx_032716rqv_mom-dau_dadoral.gif," contains a series of eight images showing an approximately 6 - 8 year old white child wearing a blindfold whose mouth is held open by an adult white female.  A naked adult white male is penetrating the minor child's mouth with his penis.

It can hardly be argued that the fact that the sexual abuse contained in the files described above is aggravated by the fact that it involves children younger than 10 years old.  The Ninth Court has agreed when it held that application of enhancement for materials involving prepubescent minors and enhancement for material portraying sadistic or masochistic conduct do not result in double counting because they account for different harms United States v. Kiefer, 760 F.3d 926, 932 (9th Cir. 2014).  See also United States v. Yarrington, 634 F.3d 440, 451-52 (8th Cir. 2011) (same).

In sum, the guidelines for the possession of child pornography exist for a reason.  The mere viewing of child pornography images by individuals such as the defendant here profoundly impacts the children who were victimized in them.  The Supreme Court has recognized:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future

years, long after the original misdeed took place.  A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

New York v. Ferber, 458 U.S. 747, 759-60 & n.10 (1982).  More specifically,

once an image is placed on the Internet, it can never be removed and becomes a permanent record of the abuse inflicted upon that child. Each and every time such an image is viewed, traded, printed, or downloaded, the child in that image is re-victimized. Moreover, the images continue to circulate as the child becomes an adult and hopefully begins a path towards recovery from the crimes inflicted upon them. The physical and psychological harm to children depicted in these images is incalculable, and the continual circulation of images harms children in a manner comparable to the actual production of the images. . . . This harm is compounded and continued when child pornography images are recirculated for the personal viewing pleasure of additional offenders.

Statement of Ernie Allen, President & CEO, National Center for Missing & Exploited Children, Testimony before the United Stated Sentencing Commission (Oct. 20, 2009), at 12, 14.[1]  As Ferber explains, the impact of the abuse is exacerbated by its capture in a permanent, recorded form and the victims may suffer more prolonged consequences as a result of the recirculation and possession of the images of their abuse by individuals like the defendant.  See United States v. Sherman, 268 F.3d 539, 547-48 (7th Cir. 2001) ("Although society at large is also a victim of these crimes, the primary, identifiable victim is the child portrayed, who must live with the knowledge that adults . . . can pull out a picture or watch a video that has recorded the abuse of that child at any time.").

---

[1] This statement is available at http://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20091020-21/Allen_testimony.pdf.

The harm described above is clearly demonstrated by the victim impact statement received in this case.[2]  The Government has thus far received one victim impact statement from three victims, each younger than 12 when they were sexually abused and photographed.  The continuing harm endured by the victims, as described by their mother, truly brings to light the enormous impact child pornography has on a child victim.

> At times my children are full of anxiety, and they do not know how to express it. Often they refuse to speak of what upsets them; they cannot tolerate any reference to the fact that their abuse images are circulated.  They would like to just bury it, but, they are not able to keep it buried, and it re-emerges in unexpected and unpredictable ways-often anger, but also sadness, hopelessness and depression. I believe that my daughters worry that others will learn what has happened to them, and that they will be shunned, ridiculed or victimized by other kids, and, for that matter, by adults, who also don[1]t know how to react to the reality that my daughters have to cope with. . . .

> My children have had their innocence stolen by this defendant, who had no right to have viewed their abuse images. My children have to live the rest of their lives knowing that they were and are still being looked at and watched. I understand that their images are "collected" by offenders. My children's images have been traded, and trafficked, and they have become contraband! But they are human beings. This defendant has damaged, demeaned and de-valued my children. He or she may tell the court they are sorry, but there is no actual responsibility for the ways that my daughters have been harmed by their actions.

The defendant's conduct violated the child victims depicted in the images and videos when he first obtained and downloaded them, and then every time he opened and viewed them – for a period of years.  Accordingly, the Court should apply each of the applicable sentencing enhancements, as the defendant agreed

---

[2] The victim impact statement received has been forwarded to the Probation Officer, who will make it available to the Court.

to in the plea agreement, and find that the Guidelines range is 78 to 97 months of imprisonment.

The sentence to be imposed by the Court must reflect the seriousness of the offense and the need to promote respect for the law.  In addition, the sentence must also afford adequate deterrence to criminal conduct.  Regarding general deterrence, other circuits have recognized that "[g]eneral deterrence is crucial in the child pornography context."  United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2010); United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007) ("[t]he logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the demand for it and so the more will be produced."); United States v. Goff, 501 F.3d 250, 261 (3d Cir. 2007) (recognizing that deterrence should be "given significant weight at sentencing" in child pornography cases).

The offense in this case is extremely serious and particularly heinous.  It victimizes the most vulnerable members of our society – our children.  However, the Government recognizes that it did not uncover any evidence that the defendant had any physical contact with minors.  Moreover, the defendant has no prior criminal history.

V.    Restitution

As set forth in the plea agreement, the Court must order that the defendant make restitution under 18 U.S.C. § 2259, and the Government reserved its right to seek restitution on behalf of victims.  See Plea Agreement at 3.  Last year, the Supreme Court ruled that persons convicted of child pornography offenses are liable for restitution "in an amount that comports with the defendant's relative

24

role in the causal process that underlies the victim's general losses[,]" and the Court set forth a framework of factors a district court should consider in determining the loss amount.  <u>United States v. Paroline</u>, 134 S.Ct. 1710, 1716-17 (2014).

To date, the Government has received one request for restitution.  As the Court is aware, if an identified victim's losses cannot be ascertained 10 days prior to the date of sentencing, the Court "shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."  18 U.S.C. § 3664(d)(5).  The Government requests that the Court set a date for the final determination of victims' losses in this case.

WEREFORE the United States respectfully requests that the Honorable Court take notice of the foregoing, and leaves the sentence to the discretion of the Court.

Respectfully submitted in Bridgeport, Connecticut this 2nd day of October, 2018.

JOHN H. DURHAM
UNITED STATES ATTORNEY

<u>*s/Jacabed Rodriguez-Coss*</u>
JACABED RODRIGUEZ-COSS
Assistant U.S. Attorney
Federal Bar No. phv04471
1000 Lafayette Blvd., 10th Floor
Bridgeport, CT  06604
Tel. (203) 696-3000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this same date the foregoing motion was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.  Parties may access this filing through the Court's system.

<u>s/Jacabed Rodriguez-Coss</u>
**JACABED RODRIGUEZ-COSS**
**Assistant U.S. Attorney**